STATE OF MAINE                                         SUPERIOR COURT
CUMBERLAND, ss.                                        CIVIL ACTION
                                                       Docket No. CV-02-341

MARY R. HILL, Personal
Representative of the Estate of
Kathryn F. Reichel,

              Plaintiff,                RECEIVED

        v.                                             ORDER

CORNELIUS A. SULLIVAN, et al.,

              Defendant.


        The complaint in this case is brought on behalf of the Estate of Kathryn F. Reichel

against Cornelius A. Sullivan M.D., and Mid Coast Hospital.  The only claims currently

pending against Mid Coast Hospital are claims that the Hospital is vicariously liable for

negligent or otherwise wrongful actions on the part of Dr. Sullivan.[1]  The complaint

specifically enumerates a number of allegedly negligent and allegedly wrongful actions

on the part of Dr. Sullivan and asserts causes of action for negligence, conscious pain

and suffering, and punitive damages.  The only factual allegation against Mid Coast

Hospital, however, is set forth in paragraph 3 of the complaint, which states as follows:

> Defendant Mid Coast Hospital is a Maine corporation with a
> principal place of business in the Town of Brunswick.  At all
> times relevant hereto, Cornelius A. Sullivan was a servant,
> agent, and/or employee of Mid Coast Hospital and acting
> within the course and scope of his authority and on the
> business of said hospital.

        In February 2008 the Estate and Mid Coast Hospital reached a settlement and

plaintiff released Dr. Sullivan under conditions that will be discussed further below.

---

[1] At the panel state, the Estate asserted a separate claim against Mid Coast Hospital based on
the alleged administration of a drug that was past its expiration date but that claim was
dismissed by this court by order dated December 13, 2004 and filed December 14, 2004.

On April 9, 2008 Mid Coast Hospital filed a motion for summary judgment arguing that the release of plaintiff's claims against Dr. Sullivan has necessarily terminated plaintiff's claims against Mid Coast Hospital as well. This motion is opposed by the Estate.[2]

1.    Summary Judgment

Summary judgment should be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. In considering a motion for summary judgment, the court is required to consider only the portions of the record referred to and the material facts set forth in the parties' Rule 56(h) statements. *E.g., Johnson v. McNeil*, 2002 ME 99 ¶ 8, 800 A.2d 702, 704. The facts must be considered in the light most favorable to the non-moving party. Id. Thus, for purposes of summary judgment, any factual disputes must be resolved against the movant. Nevertheless, when the facts offered by a party in opposition to summary judgment would not, if offered at trial, be sufficient to withstand a motion for judgment as a matter of law, summary judgment should be granted. *Rodrigue v. Rodrigue*, 1997 ME 99 ¶ 8, 694 A.2d 924, 926.

In this case the material facts are undisputed. In exchange for $400,000, the Estate released Dr. Sullivan from all claims or actions, including but not limited to those

---

[2] Also currently pending before the court are three other motions. The first is a motion by Dr. Sullivan for summary judgment dismissing the punitive damage claims as against him. That motion has been mooted by the settlement. The second is a motion by Mid Coast Hospital for summary judgment dismissing the claims against the Hospital on the ground that there is no disputed issue for trial as to whether Dr. Sullivan was either an agent or employee of Mid Coast Hospital or whether Mid Coast could be found liable for the actions of Dr. Sullivan under the doctrine of apparent authority. That motion remains to be decided in the event that the court does not grant Mid Coast Hospital's more recent motion based on the settlement with and release of Dr. Sullivan. Finally, Dr. Sullivan has filed a motion, consented to by plaintiff, to dismiss the case against him pursuant to M.R.Civ.P. 41(a)(2) and 14 M.R.S. § 156(1) based on the settlement. Without expressing any opinion as to whether 14 M.R.S. § 156(1) applies here, the court grants Dr. Sullivan's motion to dismiss under M.R.Civ.P. 41(a)(2).

asserted in the case at bar. Release ¶ 1. The Release expressly also releases and discharges Mid Coast Hospital from liability

> for that fraction (but only the fraction), portion, percentage, or amount of the total damages which shall be determined by trial or other disposition . . . to be that fraction, portion, percentage or amount of causal negligence, wrongdoing, or other liability . . . for which [Dr. Sullivan] may be found liable to [the Estate], after determination of the proportional causal fault of all persons adjudged liable to [the Estate].

Release ¶ 2(a). The Estate also agreed to indemnify Dr. Sullivan with respect to any claims against him by reason of matters that were alleged or could have been alleged in the complaint. Release ¶ 2(d).

The Release states that it is intended to constitute a Pierringer Release and also states that the Estate retains all claims against Mid Coast Hospital for damages that relate to the matters alleged in the complaint. Release ¶¶ 4(b), 6. The only issue is whether, notwithstanding this language, the release has necessarily terminated the Estate's claim against Mid Coast Hospital as well as its claim against Dr. Sullivan.

2.    Effect of Sullivan Release

The issue raised by the instant motion is one on which the Law Court has not spoken. Two Maine Superior Courts, however, have ruled that where the claim against a party is based solely on *respondeat superior* or vicarious liability based on actions of an alleged employee or agent, a settlement with the agent also releases the claim against the alleged principal. *Hewitt v. Kennebec Valley Mental Health Center*, 1986 Me. Super. LEXIS 163 (July 22, 1986) (Brody, J.); *Forbes v. Osteopathic Hospital of Maine Inc.*, 1987 Me. Super. LEXIS 108 (April 15, 1987) (Bradford, J.). On that issue the ruling in *Hewitt* was affirmed on appeal but only because the Law Court was equally divided. *Hewitt v.*

3

*Kennebec Valley Mental Health Assn.*, 529 A.2d 802, 803 (Me. 1987). Courts elsewhere have split on this issue.

Ultimately this court concludes, at least under the circumstances of this case, that the Estate's release of Dr. Sullivan necessarily terminates its claim against Mid Coast Hospital as well. This is true for several reasons.

First, as the Supreme Court of North Dakota has explained, allowing a plaintiff to proceed against the principal when the plaintiff has already released and promised to indemnify the agent on which the principal's alleged liability is premised, would create a "circle of indemnity:"

> [A] circle of indemnity would be created if the release of the servant did not release the vicarious liability of the master: If the plaintiff recovered at trial from the non-settling master, the master would have a right of indemnity against the released servant, who, under the terms of the release, would have a right of indemnity against the plaintiff. Thus, the circle is completed, leaving the plaintiff with no additional recovery through the suit against the master. *See Horejsi* at 318-320 [*Horejsi v Anderson*, 353 N.W.2d 316, 318-320 (N.D. 1984)]. The release of the servant effectively precludes any meaningful recovery from the vicariously liable master.

*Nelson v. Johnson*, 599 N.W.2d 246, 248-49 (N.D. 1999), quoting *Keator v. Gale*, 561 N.W.2d 286, 290 (N.D. 1997). *See Thompson v. Brule*, 37 F.3d 1297, 1300-01 (8th Cir. 1994) ("The rule that a Pierringer release of an agent extinguishes the vicarious liability of the principal is premised on the logic that where there is such a release, it would be useless to allow a plaintiff to maintain a suit against a principal because the plaintiff would have an offsetting obligation to the agent against whom a principal would seek indemnity"); *Reedon of Faribault, Inc. v. Fidelity and Guaranty Ins. Underwriters, Inc.*, 418 N.W.2d 488, 490 (Minn. 1988).

Second, where the only remaining claim against Mid Coast Hospital is a claim that Mid Coast is vicariously liable for alleged wrongdoing by Dr. Sullivan, Mid Coast

4

and Dr. Sullivan are not joint tortfeasors. *See, e.g., Alvarez v. New Haven Register Inc.*, 735 A.2d 306, 308, 313 (Conn. 1999); *Elias v. Unisys Corp.*, 573 N.E.2d 946, 947-48 (Mass. 1991); *Theophelis v. Lansing General Hospital*, 424 N.W.2d 478, 485 (Mich. 1988). Thus, while 14 M.R.S. § 163 provides that the settlement with one or more persons causing an injury does not bar subsequent claims against other persons "also causing the injury," that statute is inapplicable here. Since there are no independent claims against Mid Coast Hospital, the Hospital is not a party who "also caused the injury." Rather, it is a party which (assuming that the agency status of Dr. Sullivan were to be proven) would be liable for Dr. Sullivan's actions even though it did not itself cause any injury.[3]

Finally, the termination of the claims against Mid Coast Hospital follows from the express wording of the Release. By its terms, the Estate has expressly released "all persons and entities including Mid Coast Hospital from liability from that fraction (but only the fraction), portion, percentage, or amount of the total damages which shall be determined by trial or other disposition . . . to be that fraction, portion, percentage or amount of causal negligence . . . for which [Dr. Sullivan] may be found liable to [the Estate], after determination of the proportional causal fault of all persons adjudged liable to [the Estate]." Release ¶ 2(a). Under the circumstances of this case, the only source of Mid Coast Hospital's liability would be the portion of fault attributable to Dr. Sullivan. Since Mid Coast Hospital has been released from that liability, the case against Mid Coast Hospital must be dismissed.

The entry shall be:

---

[3] There is a difference between the concept of joint and several liability and the concept of joint tortfeasors. Under the concept of joint and several liability, if Dr. Sullivan's negligence caused the death of Kathryn Reichel, and it were proven that Dr. Sullivan was an agent for Mid Coast Hospital, both Dr. Sullivan and Mid Coast Hospital would be jointly and severally liable to the Estate. That does not make Dr. Sullivan and the Hospital joint tortfeasors, however, because the only tortfeasor would remain Dr. Sullivan.

5

Defendant Mid Coast Hospital's April 8, 2008 motion for summary judgment is granted, and the complaint is dismissed against defendant Mid Coast Hospital. The clerk is directed to incorporate this order in the docket by reference.

DATED:    May _21_, 2008

_____
Thomas D. Warren
Justice, Superior Court

:RK OF COURTS
umberland County
  P.O. Box 287
nd, Maine 04112-0287

PHILIP MANCINI ESQ
ONE MONUMENT WAY
PORTLAND ME 04101

*Plaintiff*

P.O. Box 287
ortland, Maine 04112-0287

P.O. Box 287

ROBERT NEWTON ESQ
PO BOX 9546
PORTLAND ME 04112

*Mid Coast
Hospital*

berland County
O. Box 287
Maine 04112-0287

GEORGE SCHELLING ESQ
PO BOX 917
BANGOR ME 04402

*Sullivan*