[No. C049246. Third Dist. Feb. 10, 2006.]

V. J. AARONOFF, Plaintiff and Appellant, v.
GLORIA MARTINEZ-SENFTNER et al., Defendants and Respondents.

## Counsel

Steven J. Aaronoff for Plaintiff and Appellant.

Martinez-Senftner Law Firm, Gloria P. Martinez-Senftner and Ellen C. Dove for Defendants and Respondents.

## Opinion

**BLEASE, Acting P. J.**—This is an appeal from a judgment in favor of defendants James Senftner (James) and Gloria Martinez-Senftner (Gloria), the plaintiff's parents, after they successfully demurred to a second amended complaint.[1] The 40-year-old plaintiff sought damages from her parents for sexual abuse inflicted by her father when she was a child. The trial court found the claims barred by the statute of limitations, Code of Civil Procedure section 340.1.[2]

Section 340.1, subdivisions (a) and (b) provide that a plaintiff must bring an action for damages caused by childhood sexual abuse before the age of 26 or

---

[1] We shall refer to James and Gloria by their first names for ease of reference.

[2] A reference to a section is to the Code of Civil Procedure unless otherwise specified or implied from the context.

within three years of the date of discovery, whichever is later. A 1997 action by the plaintiff against her parents was dismissed pursuant to these provisions. However, a recent amendment to section 340.1 permits a revival of the action, notwithstanding a prior termination on the basis of the statute of limitations, if commenced in 2003 against a third party who failed to take preventive action after notice of the unlawful sexual conduct "by an employee, volunteer, representative, or agent" of the third party. (§ 340.1, subds. (b)(2) & (c), as amended by Stats. 2002, ch. 149, § 1.)

At issue in this appeal is whether the revival statute applies to Gloria. The plaintiff claims that James was the agent of Gloria based on amendments to the complaint which added business entities, in which James and Gloria were partners and officers, as the situs of some of the alleged molestations. The business entities were not served and the trial court ruled the addition of the business entities did not change the analysis as to the individual defendants. It sustained a demurrer in their favor and entered judgment thereon.

We shall conclude that the alleged sexual abuse arose out of the parental relationship between James and the plaintiff, was not a product of the parties' relationship with the business entities, that James, as the perpetrator, is not a subject of the revival statute, and that the relationship of James to Gloria, as husband and wife, is not an agency relationship within the meaning of section 340.1, subdivision (b)(2). Accordingly, the demurrers were properly sustained because the action is barred by the judgment in the earlier action which shows the action was dismissed under the provisions of section 340.1, subdivision (a).

## FACTUAL AND PROCEDURAL BACKGROUND

In 1997, plaintiff brought an action against defendants James Senftner and Gloria Martinez-Senftner for childhood sexual abuse and intentional infliction of emotional distress.[3]

The 1997 action alleged James and Gloria were plaintiff's parents and that James repeatedly sexually abused plaintiff when she was between the ages of five and 12. A judgment was entered in favor of James and Gloria, following the grant of summary adjudication of the sexual abuse claims, on the ground

---

[3] Respondents' request for judicial notice of the clerk's transcript on appeal in the 1997 action and the legislative history of section 340.1 is granted. The 1997 complaint contained other causes of action unrelated to the allegations of sexual abuse.

she was over the age of 26 and discovered her injury and its alleged cause and effect no later than 1989, making her claims untimely under section 340.1, subdivision (a).[4]

In 2002, the Legislature amended section 340.1. (Stats. 2002, ch. 149, § 1.)[5] The amendment revived for the one year period beginning January 1, 2003, any claim permitted to be filed under subdivision (b)(2) "that would otherwise be barred as of January 1, 2003, solely because the applicable statute of limitations has or had expired. . . ." (*Id.*, subd. (c).) The revival is limited to a party "on notice, of any unlawful sexual conduct by an employee, volunteer,

---

[4] At the time of the 1997 action, section 340.1 stated that an action for damages suffered as a result of childhood sexual abuse had to be commenced within eight years of the date the plaintiff reached the age of majority (by age 26) or three years from the date the plaintiff discovered the injury was caused by the sexual abuse. (Stats. 1994, ch. 288, § 1, p. 1928.) Plaintiff was born July 4, 1963, making her 34 years old at the time she brought the 1997 action.

[5] In pertinent part, section 340.1 currently provides as follows:

"(a) In an action for recovery of damages suffered as a result of childhood sexual abuse, the time for commencement of the action shall be within eight years of the date the plaintiff attains the age of majority or within three years of the date the plaintiff discovers or reasonably should have discovered that psychological injury or illness occurring after the age of majority was caused by the sexual abuse, whichever period expires later, for any of the following actions:

"(1) An action against any person for committing an act of childhood sexual abuse.

"(2) An action for liability against any person or entity who owed a duty of care to the plaintiff, where a wrongful or negligent act by that person or entity was a legal cause of the childhood sexual abuse which resulted in the injury to the plaintiff.

"(3) An action for liability against any person or entity where an intentional act by that person or entity was a legal cause of the childhood sexual abuse which resulted in the injury to the plaintiff.

"(b)(1) No action described in paragraph (2) or (3) of subdivision (a) may be commenced on or after the plaintiff's 26th birthday.

"(2) This subdivision does not apply if the person or entity knew or had reason to know, or was otherwise on notice, of any unlawful sexual conduct by an employee, volunteer, representative, or agent, and failed to take reasonable steps, and to implement reasonable safeguards, to avoid acts of unlawful sexual conduct in the future by that person, including, but not limited to, preventing or avoiding placement of that person in a function or environment in which contact with children is an inherent part of that function or environment. For purposes of this subdivision, providing or requiring counseling is not sufficient, in and of itself, to constitute a reasonable step or reasonable safeguard.

"(c) Notwithstanding any other provision of law, any claim for damages described in paragraph (2) or (3) of subdivision (a) that is permitted to be filed pursuant to paragraph (2) of subdivision (b) that would otherwise be barred as of January 1, 2003, solely because the applicable statute of limitations has or had expired, is revived, and, in that case, a cause of action may be commenced within one year of January 1, 2003. Nothing in this subdivision shall be construed to alter the applicable statute of limitations period of an action that is not time barred as of January 1, 2003.

"(d) Subdivision (c) does not apply to either of the following:

"(1) Any claim that has been litigated to finality on the merits in any court of competent jurisdiction prior to January 1, 2003. Termination of a prior action on the basis of the statute of limitations does not constitute a claim that has been litigated to finality on the merits."

representative, or agent" of the party, who fails to take reasonable steps to prevent the conduct. (§ 340.1, subd. (b)(2).)

Relying on the revival statute, plaintiff filed an action against her parents and Doe defendants on December 31, 2003, alleging claims for childhood sexual abuse and intentional infliction of emotional distress based on the abuse.[6] The first amended complaint alleged Gloria and James were husband and wife and had established various business entities. It alleged that James sexually abused plaintiff from the time she was four years old until she was 12 years old. It also alleged that Gloria was aware of the abuse but took no steps to prevent it because she did not wish to threaten her financial prosperity.

Defendants claim they successfully demurred to the first amended complaint although the record does not contain the demurrer to that complaint. In any event, plaintiff filed a second amended complaint in which three corporate entities were substituted for three of the "Doe" defendants. It alleged that plaintiff was an employee of the business entities and that James sexually abused her during business hours on business premises. Plaintiff deleted from the complaint any reference to the fact she is the defendants' daughter. The complaint was not served on the business entities.

The second amended complaint makes the following allegations. James and Gloria were business partners. James was a director, officer, and employee of three corporate car dealerships: Senftner Chevrolet, Oldsmobile, Pontiac, Inc., a South Dakota corporation operating in Herreid, South Dakota (Senftner Chevrolet); Senftner Rotary Motors, Inc., an Iowa corporation operating in Des Moines, Iowa (Senftner Rotary); and Senfco Auto Center, Inc., an Iowa corporation operating in Des Moines and Sioux City, Iowa (Senfco). Gloria was an officer and employee of all three corporate car dealerships.

The second amended complaint alleges that when plaintiff was approximately eight years old, James and Gloria hired her to work as an employee of Senfco in Sioux City and Senftner Chevrolet in Herreid. Gloria and James

---

[6] We augment the record to include the original and first amended complaints in this action. The original complaint named Jane and John Doe as defendants. Section 340.1, subdivision (m) requires that any action filed by a plaintiff who is 26 or older must not name any defendant until "there has been a showing of corroborative fact as to the charging allegations against that defendant." James and Gloria were named in place of Jane and John Doe in the first amended complaint filed on June 15, 2004.

required plaintiff to work at the car dealerships, where she stamped mail, filed business records, delivered documents, served as a passenger in test drives, answered telephones, and cleaned the premises. When plaintiff was approximately 11 years old, James and Gloria hired her to work for Senftner Rotary, performing the same tasks she had performed for Senfco.

From the time plaintiff was approximately four years old and continuing until she was approximately 13 years old, James sexually abused her. However, the abuse did not occur on the premises of the business entities until plaintiff was 10 years old. Gloria was aware of the sexual abuse and personally witnessed several acts of abuse. Many of the acts occurred on the premises of the named businesses, during business hours. Gloria failed to take reasonable steps or to implement reasonable safeguards to prevent or avoid the acts of unlawful sexual conduct by James. From the time plaintiff was a pre-adolescent until long after she was an adult, Gloria and James told plaintiff James was a doctor, and that it was acceptable for him to examine her body.

Based upon the facts above, the second amended complaint alleges a cause of action against all defendants (James and Gloria, and Senftner Chevrolet, Senftner Rotary, and Senfco) for childhood sexual abuse. It alleges "Gloria was fully aware of the extent and scope of the depraved pattern of sexual abuse carried out by James against plaintiff, and hence was his aider, abettor and co-conspirator in carrying out and concealing the sexual abuse and molestation. Furthermore, Gloria was an officer and employee of defendants Senftner Chevrolet, Senftner Rotary, and Senfco, and had a duty to take reasonable safeguards to prevent employees and/or agents of those businesses from committing acts of unlawful sexual conduct against minors." The complaint also alleges a cause of action against all defendants for intentional infliction of emotional distress. The second amended complaint was served only on Gloria.[7]

Gloria and James demurred to the complaint. The trial court sustained the demurrer, finding plaintiff's claims against the individual defendants Gloria and James barred by the statute of limitations. The court said that it made no ruling regarding the business entity defendants as they were not parties to the demurrer.

---

[7] It does not appear on the record before us that the second amended complaint was served either on James or the foreign corporate defendants. Nevertheless, James was a party to the demurrer and we will resolve the issue tendered regarding him.

Plaintiff filed a timely appeal from the judgment entered following the sustaining of the demurrer.

## DISCUSSION

## I

### Introduction

This appeal arises from a judgment entered following the sustaining of a demurrer by James and Gloria to the second amended complaint. The sole issue is whether the action against the parents is within the revival provisions of section 340.1, subdivisions (b)(2) and (c). We shall conclude it is not.

The action against James is revived only if subdivision (c) of section 340.1 applies to the perpetrator of a childhood sexual abuse. The action against the parents is revived, as to Gloria, only if it meets the requirements of subdivision (b)(2), that the childhood sexual abuse arose out of a relationship between James and Gloria in which James was "an employee, volunteer, representative, or agent" of Gloria.

Whether that is the case turns on the allegations of the second amended complaint, aided by matters of which we may take judicial notice.

## II

### Judicial Notice

■ A demurrer based on a statute of limitations is appropriate if the ground appears on the face of the complaint or from matters of which the court may or must take judicial notice. (*Black v. Department of Mental Health* (2000) 83 Cal.App.4th 739, 745 [100 Cal.Rptr.2d 39]; § 430.30.) ■ Judicial notice may be taken of any court record. (Evid. Code, § 452, subd. (d).)

Defendants requested that the trial court take judicial notice of the record in the 1997 action, including the order granting summary judgment, which stated, "plaintiff discovered her injury and its alleged cause and effect by at least 1989, which makes her first cause of action untimely under Code of Civil Procedure section 340.1." The record shows no opposition to this request.

Although the clerk's transcript does not contain an order granting judicial notice, we may assume the trial court granted judicial notice inasmuch as

defendants gave plaintiff sufficient notice of the request and furnished the trial court with sufficient information to enable it to take judicial notice of the matter. (Evid. Code, § 453 [trial court shall take judicial notice of any matter of which it may take judicial notice if the requesting party gives sufficient notice of the request and furnishes the court with sufficient information to take judicial notice].) Additionally, Evidence Code section 456 provides the trial court must indicate for the record if it denies a request for judicial notice. The record contains no indication the request for judicial notice was denied. We conclude the trial court took judicial notice of the requested matter, particularly in light of its decision.

Defendants requested that this court take judicial notice of the record in the 1997 case and the prior versions of the complaint in this case. We may take judicial notice of the record in the 1997 case pursuant to Evidence Code section 452, subdivision (d), and we have done so. We augment the record to include the original and first amended complaint in this action. (Cal. Rules of Court, rule 132(a).)

### III

### The Revival Statute

Plaintiff claims the 2002 amendments to section 340.1 revived her previously time-barred claims. Defendants argue the revival provisions of section 340.1 do not apply to the claims against them. We shall conclude defendants are correct.

■ Section 340.1 provides that an action for recovery of damages suffered as a result of childhood sexual abuse must be commenced within three years of discovering that injury occurred as the result of the abuse, or within eight years after the plaintiff attains the age of majority, whichever is later. (§ 340.1, subd. (a).) This limitations provision applies whether the defendant is the perpetrator of the abuse, or a third party whose liability stems from a negligent or intentional act which was the legal cause of the abuse that resulted in the injury. (§ 340.1, subd. (a)(1)–(3).)

■ In the case of a third party defendant, the action must be commenced before the plaintiff's 26th birthday unless the third party defendant "knew or had reason to know, or was otherwise on notice, of any unlawful sexual conduct by an employee, volunteer, representative, or agent, and failed to take reasonable steps, and to implement reasonable safeguards, to avoid acts of unlawful sexual conduct in the future by that person" in which case the action must be commenced within three years of discovering the injury was caused by the abuse. (§ 340.1, subd. (b)(2).) The one-year revival period for

the year 2003 applies only to these actions, reviving any such claim previously barred by the statute of limitations, unless the claim was litigated to finality on the merits. (§ 340.1, subd. (c).) A prior termination on the basis of the statute of limitations does not constitute a resolution on the merits. (§ 340.1, subd. (d)(1).)

The complaint does not directly allege either the age of the plaintiff, or the "discovery date," the date on which she discovered (or reasonably should have discovered) her injury was caused by the sexual abuse. However, the complaint alleges plaintiff was approximately eight years old in 1971, from which we may conclude plaintiff was born in 1963 and would have had her 26th birthday in 1989.[8]

The order granting summary judgment in the prior case makes clear that the issue of when plaintiff discovered her injury and its cause was litigated and determined in the prior proceeding. Plaintiff is precluded by the doctrine of collateral estoppel from relitigating this issue. (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896–897 [123 Cal.Rptr.2d 432, 51 P.3d 297].)

IV

Claims Against James

Despite plaintiff's argument to the contrary it is apparent from the face of the complaint and from matters judicially noticed that any action against James is barred by the limitations provision in section 340.1.

■ The limitation period that applies to the person who allegedly committed the act of sexual abuse is governed solely by subdivision (a)(1) of section 340.1. There is no one-year revival period for actions against the perpetrator of the abuse. Subdivision (a)(1) clearly sets forth two time limitations for bringing an action: three years from discovery, or eight years from reaching majority, whichever is later. In either case, the last year for bringing an action was 1989.

Plaintiff argues James's actions are covered by subdivision (a)(2) and (3) of section 340.1, as well as subdivision (a)(1). These subdivisions apply to persons or entities whose negligent or intentional act was a legal cause of the abuse. Standing alone, they theoretically could apply to actions by the perpetrator of the abuse. But, juxtaposed as they are with the

---

[8] Additionally, we have taken judicial notice of the record in plaintiff's 1997 lawsuit against her parents. In it, as previously stated, she asserts under oath that she was born July 4, 1963.

subdivision dealing specifically with the perpetrator, they cannot be read to apply to the perpetrator. It would be nonsensical to interpret the statute to apply two separate limitations schemes to the perpetrator of the abuse, and it follows that the current complaint against James is barred.

V

Claims Against Gloria

Plaintiff attempts to assert her causes of action against Gloria pursuant to the revival provision of section 340.1, subdivision (c). That provision applies only to claims for damages where: (1) the defendant's negligent or intentional act was a legal cause of the abuse; and (2) the abuse was carried out by an employee, volunteer, representative, or agent of a defendant who knew of the abuse and failed to take action to prevent it.

■ "Our role in construing a statute is to ascertain the intent of the Legislature in order to effectuate the purpose of the law. [Citation.] Because the statutory language is generally the most reliable indicator of that intent, we look first at the words themselves, giving them their usual and ordinary meaning and construing them in context. [Citation.] If the plain language of the statute is clear and unambiguous, our inquiry ends, and we need not embark on judicial construction. [Citations.] If the statutory language contains no ambiguity, the Legislature is presumed to have meant what it said, and the plain meaning of the statute governs. [Citations.]" (*People v. Johnson* (2002) 28 Cal.4th 240, 244 [121 Cal.Rptr.2d 197, 47 P.3d 1064].)

The language of section 340.1, subdivision (b)(2) clearly does not apply to the parental relationship. The statute is targeted at third party defendants who, by virtue of certain specified relationships to the perpetrator (i.e., employee, volunteer, representative, or agent), could have employed safeguards to prevent the sexual assault. It requires the sexual conduct to have arisen through an exploitation of a relationship over which the third party has some control. In other words, the perpetrator's access to the victim must arise out of the perpetrator's employment with, representation of, agency to, etc., the third party, and the third party must be in such a relationship with the perpetrator as to have some control over the perpetrator. The child must be exposed to the perpetrator as an inherent part of the environment created by the relationship between the perpetrator and the third party, in this case a business environment.

The language of the statute necessarily implies that the unlawful sexual conduct arises out of an environment over which the third party has some control. Otherwise, it would be impossible for the third party to take steps

and implement safeguards to avoid future abuse. For example, the employer of an office worker would have neither the ability nor responsibility to "take reasonable steps, and to implement reasonable safeguards," to prevent the office worker from assaulting his or her own child, even if the employer had knowledge of prior assaults. On the other hand, the statute would apply, and the employer would have responsibility if the nature of the employee's work put the employee in contact with children, and the employer knew or should have known the employee had assaulted children in the past.

That was not the case here. The relationship sued upon was essentially a parent-child relationship, which is not a relationship included in the one-year revival provision.

Our construction of the statute is confirmed by the legislative history of the 2002 amendment. The analyses of the Senate Judiciary Committee explained that the responsible third party entity to which the legislation is directed is an entity such as "an employer, sponsoring organization or religious organization . . . ." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1779 (2001–2002 Reg. Sess.) as amended May 2, 2002, p. 4.) It went on to explain: "General theories of negligence impose a duty of care where a third person or entity has assumed some responsibility, through a relationship or otherwise, for a person's conduct or a person's safety. An employer thus bears a duty of care to third parties for the conduct of an employee engaging in acts related to his employment, but not for acts unrelated to that employment. Similarly, a school district, church, or other organization engaging in the care and custody of a child owes a duty of care to that child to reasonably ensure its safety. [¶] In addition, separate from respondeat superior liability, an employer may be liable under Restatement (Second) of Agency Section 213 for harm caused by an employee whom the employer hired or retained with actual or constructive knowledge that the employee's retention created, *in light of the work*, an undue risk of harm to others. [¶] Thus, an employee's commission of a crime, such as the sexual abuse of a child, obviously lies outside the scope of a person's employment. However, depending on the facts of the case, the employer may be held liable for failure to adequately screen that employee before hiring, or for failure to adequately supervise the employee on the job. Further, an employer with knowledge of prior acts of abuse by the employee who fails to take reasonable measures to prevent future acts may be held liable for a failure to warn or a failure to take precautions regarding that employee." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1779 (2001–2002 Reg. Sess.) as amended May 2, 2002, p. 5, italics added.)

From this analysis it is clear the statute applies to assaults that are related to the perpetrator's employment, or that are made more likely by the nature

of the perpetrator's work and the fact of the perpetrator's continued employment. The parent-child relationship is not covered by the revival provision.

Even though plaintiff alleged James was Gloria's agent, and plaintiff was their employee, from the complaint and the matters judicially noticed, it appears that the alleged abuse was a result of the parental relationship, not any employment relationship.

■ Although plaintiff did not allege she was the defendants' daughter in the second amended complaint, she did so in the two prior versions of the complaint. A factual allegation in a complaint that is omitted in a subsequent amended pleading without explanation may be considered by the court in ruling on demurrer to the later pleading. (*Reichert v. General Ins. Co. of America* (1968) 68 Cal.2d 822, 836–837 [69 Cal.Rptr. 321, 442 P.2d 377].) Additionally, the complaint alleges James began sexually assaulting plaintiff when she was four years old, and continued until she was 13. However, the alleged abuse on the business premises did not start until plaintiff was 10 years old. The fact that two-thirds of the time period in which the alleged abuse occurred had passed before plaintiff began working for the defendants indicates the alleged abuse was unrelated to the work relationship. Also, plaintiff alleges defendants forced her to work at one of the car dealerships. It stands to reason they could not have forced her to work anywhere if they were not her parents.

Plaintiff indicates the instances of abuse she alleges in this complaint were separate instances from those alleged in the prior action. It is not possible for plaintiff to file a second action claiming new instances of childhood abuse by the same abuser caused psychological damage to her as an adult. This would be an impermissible splitting of the cause of action. (See *Hamilton v. Carpenter* (1940) 15 Cal.2d 130, 132 [98 P.2d 1027].) In any event, whether plaintiff was actually employed by the defendants is not crucial because the abuse that is alleged to have occurred did not arise out of the employment relationship, but out of the parental relationship, and the revival period does not apply to such an action.

■ We conclude that pursuant to the complaint and the matters judicially noticed, plaintiff was James's and Gloria's daughter, any alleged abuse resulted from the parental relationship, and not from an employment relationship. The one-year revival period does not apply to instances of abuse arising out of the parental relationship. Having determined subdivision (c) of section 340.1 is inapplicable to revive the claims against either James or Gloria, the judgment in the 1997 action is res judicata. Therefore, the trial court properly dismissed the complaint.

## DISPOSITION

The judgment is affirmed.

Sims, J., and Robie, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 10, 2006, S142018. George, C. J., did not participate therein.